IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

GUARANTY BANK &
TRUST COMPANY                                                          PLAINTIFF

v.                                            CIVIL ACTION NO. 4:13-CV-100-NBB-SAA

AGREX, INC. D/B/A/ FGDI,
WHOLLY OWNED SUBSIDIARY
OF MITSUBSHI CORPORATION                                               DEFENDANT

MEMORANDUM OPINION

This cause comes before the court upon the parties motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

In 2010, Murtaugh-Walker Farms ("MWF"), a Mississippi farming partnership, entered into a series of commodity futures contracts with defendant FGDI. The contracts required MWF to deliver defined amounts of corn and soybeans at agreed upon prices within a specific range of months in 2010. MWF was unable to perform four of their commodity futures contracts with FGDI in 2010. Soon thereafter, MWF dissolved.

On September 19, 2011, David Walker, a former partner of MWF, received and signed a letter from FGDI regarding the four unperformed MWF contracts from 2010. In the letter, FGDI acknowledged MWF's dissolution and stated its willingness to "change the names on the contracts [ ] to 'David Walker.'" The letter also stated, "FGDI [was] willing to 'roll' the contracts to next year shipment . . . for 2012." Further, FGDI stated, "[w]hen it receives a signed copy of this letter representing [David Walker's] intent to deliver, [FGDI] will assign the

contracts listed above to the entity 'David Walker' and [FGDI] will resend the contracts for your signature."

Along with the four contracts discussed in the letter, David Walker entered into three additional corn commodity contracts with FGDI in the months of March, June, and July of 2012, one of which took the place of a previously unperformed MWF contract.[1] During that time, on April 12, 2012, David Walker met with the plaintiff, Guaranty Bank & Trust Company ("Guaranty"), to execute a loan for the production of crops in the 2012 growing season. David Walker signed an Agricultural Loan Agreement with plaintiff Guaranty, secured by Walker's 2012 soybean and corn crops, and also signed an Agricultural Security Agreement, secured by Walker's farm products and equipment, etc. The equipment and land descriptions were attached to the agreement. Together, the loan principals were over $600,000, to be dispersed according to the agreed upon farm plan. Throughout the season, Walker drew over $400,000 to fund his 2012 growing operation.

On April 18, 2012, six days after Walker executed the loan agreements, Guaranty filed financing statements with the Mississippi Secretary of State's central filing system, perfecting its production-money security interest in David Walker's 2012 soybean and corn crops, along with, inter alia, Walker's specified and unspecified equipment and lands, as the parties here have stipulated.

At the end of the 2012 growing season, David Walker delivered all of his corn and soybean crops to two grain terminals in Mississippi. Defendant FGDI notified the grain

---

[1] Contract number 15789 between FGDI and David Walker, dated June 21, 2012, was signed as a substitute for contract number 15407 between FGDI and Murtaugh-Walker Farms dated May 7, 2010, as expressed in the deposition of Tom Bryant, assistant general manager of FGDI. Of all the MWF contracts allegedly assigned or delegated from MWF to David Walker, only contract number 15789 (previously 15407) was produced with David Walker's signature, in his personal capacity, as the party to be charged with performance.

terminals of their contracts with David Walker, and the grain terminals applied the delivered crops to FGDI's account, after which FGDI sold the grain to the grain terminals.

According to defendant FGDI, David Walker filled all corn contracts but was unable to fill, in full, the soybean contract, contract number 15176. FGDI summed up the amounts due David Walker and set-off their estimated damages for the partially filled soybean contract.[2] The table below, as referenced in Tom Bryant's deposition testimony, expresses FGDI's accounting for David Walker's 2012 grain contracts:

| Contact # | commodity | Qty | Price | Proceeds |
|---|---|---|---|---|
| 15176 | Beans | 487.18 | $8.07 | $3,931.06 |
| 15176 | Beans | 10910.53 | $8.89 | $96,993.52 |
| 15436 | Corn | 10000 | $3.59 | $35,900.00 |
| 15098 | Corn | 20000 | $3.90 | $77,950.00 |
| 17153 | Corn | 10000 | $5.17 | $51,650.00 |
| 17589 | Corn | 20000 | $4.78 | $95,500.00 |
| 18493 | Corn | 11174.32 | $7.39 | $82,578.22 |
| Corn Adjustments-grades | | | | -$27,819.33 |
| Bean Adjustments-Grades | | | | $349.53 |
| Total | | | | $417,033.00 |
| Cancellations | | | | |
| 15176 | Beans | 54689 | -$6.58 | -$359,853.62 |
| Due Walker | | | | $57,179.38 |

This table references six contracts FGDI asserts against David Walker. Defendant FGDI's off set is referenced under the heading "Cancellations." The table records 54,688

---

[2] FGDI assumes authority to set-off from the terms of their contract with David Walker. FGDI's contract terms state, "Buyer may, to the fullest extent permitted by law, exercise its right of set-off, or set-off rights of Buyer's related businesses against any amounts otherwise due Seller."

bushels of soybeans undelivered. Adjacent to the undelivered soybean figure is a price of -$6.58 per bushel.[3] FGDI claims a total loss of -$359,853.62 as a result of the undelivered soybeans.

On February 12, 2013, plaintiff Guaranty, through demand letter, requested the proceeds of David Walker's 2012 crops from FGDI claiming their recorded financing statement covering David Walker's 2012 crops assumes priority over any interest FGDI asserts based on previous contracts with MWF. In response, FGDI issued a check payable to David Walker, plaintiff Guaranty, and Commodity Credit Corporation[4] for $57,179.38, the amount in excess of FGDI's set-off regarding the unfilled soybean contract.

Plaintiff Guaranty filed suit in state court against defendant FGDI and both grain terminals on April 26, 2013, to recover the proceeds of David Walker's 2012 crops. Defendant FGDI removed the action to this court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a). This court found the non-diverse grain terminals qualify as "buyers in the ordinary course of business" under Miss. Code Ann. § 75-1-201 that took free from Guaranty's security interest and therefore, were dismissed from the suit. Plaintiff Guaranty is a citizen of the State of Mississippi and defendant FGDI is a citizen of the State of Kansas. The amount in controversy exceeds $75,000. This court retains proper jurisdiction.

Plaintiff Guaranty and defendant FGDI moved for summary judgment. Guaranty asserts the contracts between MWF and FGDI were improperly assigned to David Walker and in the alternative, if MWF's contracts were properly assigned to David Walker, Guaranty's security interest in David Walker's crops and proceeds assume priority over FGDI's set-off damages related to David Walker's unperformed soybean contract. Defendant FGDI asserts Guaranty,

---

[3] According to the statement of Tom Bryant, FGDI Assistant Manager responsible for David Walker's account, the price of -$6.58 is the "futures hedging loss" incurred by FGDI per undelivered soybean bushel. No further explanation or justification regarding the origin of this figure is provided in the record.
[4] Commodity Credit Corporation's involvement in the financing of David Walker's farming operation is undisclosed in the record.

through their security agreement, became an assignee of David Walker and as assignee, had no superior claim to David Walker's crop proceeds than David Walker had himself. Neither party requested a jury trial and were therefore granted a bench trial.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit," and any facts which would be irrelevant to the potential outcome are immaterial. *Id*.

When parties file cross-motions for summary judgment, each party's motion is reviewed independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014). Each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Eng'r, Inc*., 359 F.533, 539 (5th Cir. 2004). The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the court is free to treat the case as if it were submitted for final resolution on a stipulated record. *See Bricklayers, Masons & Plasterers Int'l. Union v. Stuart Plastering Co.,* 512 F.2d 1017, 1023 (5th Cir.1975); *Hindes v. United States,* 326 F.2d 150, 152 (5th Cir. 1964) ("The mere fact that both appellants and appellee moved for summary judgment does not warrant the grant of either motion if the

record reflects a genuine issue of fact."), *cert. denied,* 377 U.S. 908, 84 S.Ct. 1168 (1964). Indeed, the contrary is likely to be true if the parties have moved for summary judgment "on different legal theories dependent on different constellations of material facts." *Bricklayers,* 512 F.2d at 1023.

If a genuine issue of fact exists, the "filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion." *Schlytter v. Baker,* 580 F.2d 848, 849 (5th Cir.1978). "When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears." *Id.* It has been suggested that, in the latter situation, unless the parties expressly state to the contrary, the submission of cross-motions for summary judgment "is equivalent to [consent to] a stipulated trial on an agreed statement." Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 484 n. 92. The cases have generally not gone that far. *See, e.g., Shook v. United States,* 713 F.2d 662, 665 (11th Cir.1983) ("when both parties proceed on the same legal theory and rely on the same material facts the court is signaled that the case is ripe for summary judgment") (citing *Bricklayers Int'l,* 512 F.2d at 1017), and we need not decide the merits of that position. *John v. State of La. (Bd. of Trustees for State Colleges & Universities),* 757 F.2d 698, 705 (5th Cir. 1985).

The parties to this case did not demand a jury trial. "[A] district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.,* 932 F.2d 394, 397 (5th Cir. 1991). "[I]t makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." *Id.* at 398. "Where the evidentiary facts are not

disputed, a court in a nonjury case may grant summary judgment if a trial would not enhance its ability to draw inferences and conclusions." *Id.*

Analysis

The following contractual priority dispute is of first impression in Mississippi. Before addressing the priority dispute, the court must address whether MWF's contracts with FGDI, including the unperformed soybean contract, were properly assigned to David Walker. Mississippi contract law applies.[5]

MWF's 2010 contracts with FGDI required delivery of specified amounts of corn and soybeans at future dates for specified prices. Corn and soybeans are defined as goods, and transactions involving the sale of goods are governed by Chapter 2 of the Mississippi Uniform Commercial Code. Miss. Code Ann. §§ 75-2-102, 105.

Guaranty asserts MWF's contracts with FGDI were improperly assigned to David Walker in his personal capacity, making FGDI's set-off of MWF/David Walker's soybean contract inapplicable to the priority dispute. Guaranty points to certain facts as the basis of its argument while providing sparse authority or analysis to further its position. Guaranty states: (1) no contracts have been put forth to show FGDI or David Walker followed the plain language of the September 19, 2011 assignment letter stating FGDI's intent to rescind the contracts in MWF's name for David Walker's and return the contracts to Walker for signature; (2) neither MWF nor David Walker farmed in 2011, and (3) MWF's 2010 contracts were not carried over to 2011[6] and therefore cannot be carried over to 2012 in David Walker's name.

---

[5] A federal court with diversity jurisdiction must apply the law of the state in which it sits. *See Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).
[6] The contract shipment dates on the September 19, 2011 letter from FGDI to David Walker list MWF shipment dates for the corn contracts as, "Aug-Sept 2011," "Aug-Sept 201," "Aug-Sept 2011." The soybean contract shipment date is listed as, "Oct-Nov 20101." Contract numbers 15436 (corn) and 15176 (soybeans) with shipment years listed as "201" and "20101" on the "assignment" letter are nonsensical, and the year each contract is intended for delivery is indeterminable due to typographical error.

These facts and arguments bear significance when applying the Statute of Frauds, found at Miss. Code Ann. § 75-2-201; however, Guaranty omits analysis on this issue. The statute provides:

> Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. . . .

Application of Miss. Code Ann. § 75-2-201 to the letter FGDI sent David Walker in 2012 and to the contracts involved would be of value to determine whether FGDI's 2012 contracts bind David Walker and/or Guaranty; however, Guaranty relies on the facial unlikelihood of the contracts being assignable after MWF's dissolution, coupled with the lack of farming operations by David Walker in the interim between 2010 and 2012, to assert the contracts do not bind David Walker. In response to Guaranty's open assertion that FGDI's contracts with MWF were void by dissolution of MWF, FGDI correctly argues that contracts "generally are not excused when performance becomes burdensome or difficult, [and] the fact that a party fails to perform and materially breaches the contract does not render the contract terminated or void." *In re Estate of Picket*, 879, So. 2d 467, 471 (Miss. Ct. App. 2004). However, FGDI's argument only concludes the 2010 contracts are actionable against MWF.

Additionally, FGDI asserts MWF's 2010 contracts were ratified by David Walker in 2012. FGDI produced what it designates as "roll sheets" of the 2010 MWF contracts. FGDI's "roll sheets'' list incremental price changes with related dates and notations. David Walker evidenced notice of the incremental price changes in 2012 by signing each separate "roll sheet" for the previous MWF contract FGDI claims were ratified by Walker. Viewing this fact in the light most favorable to FGDI, this court finds plausible that MWF's contracts with FGDI were

ratified by David Walker due to the presence of his signature on the 2012 "roll sheets" of MWF's previous contracts. Assuming *arguendo,* that FGDI's 2010 contracts were ratified by David Walker, this court must decide whether Guaranty's perfected purchase-money security interest assumes priority over FGDI's claim to proceeds through set-off. The court determines that it does.

FGDI bases their superior priority position of set-off over Guaranty on Miss. Code Ann. § 75-9-404. Guaranty, on the other hand, argues superior priority and right to authorize disposition of collateral through Miss. Code Ann. 75-9-315(a)(1). Although neither statute explicitly addresses priority of one interest over another, Guaranty's position is convincingly applied to the facts herein after an analysis of FGDI's priority claim.

FGDI's argument allowing a proper set-off of David Walker's contracts is multi-layered. FGDI asserts it became account debtor of David Walker after a portion of his crops were delivered to the grain terminals, and at the point of sale, Guaranty's interest in David Walker's crops and proceeds converted to an interest in David Walker's accounts.[7] FGDI argues that the secured interest of Guaranty, as assignee of David Walker, arises only after FGDI performed on its contracts with David Walker. Guaranty's interest would then be in the form of David Walker's proceeds on accounts, not in David Walker's 2012 crops or proceeds of crops. For FGDI's argument to succeed, FGDI must be considered an account debtor of David Walker and Guaranty's secured interest must be in that of David Walker's accounts.

In support of FGDI's position over Guaranty, FGDI states the long held maxim that, "the assignee [Guaranty's] rights can rise no higher than those of the assignor [David Walker]." *Ford v. White*, 495 So. 2d 494, 497 (Miss. 1986).

---

[7] Miss. Code Ann. § 75-9-102(a)(1) defines "Account(s)" as "[a] means for a right to payment of a monetary obligation, whether or not earned by performance[.]"

FGDI argues Miss. Code Ann. § 75-9-404 applies, which provides:

(a) Unless an account debtor [FGDI] has made an enforceable agreement not to assert defenses or claims . . . the rights of an assignee [Guaranty] are subject to:

   (1) All terms of the agreement between the account debtor [FGDI] and assignor [David Walker] and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and

   (2) Any other defense or claim of the account debtor [FGDI] against the assignor [David Walker] which accrues before the account debtor [FGDI] receives a notification of the assignment authenticated by the assignor [David Walker] or assignee [Guaranty].

Here, FGDI argues Guaranty's secured interest is subject to all terms of the agreement between FGDI and David Walker. One such term in FGDI's contracts with MWF and David Walker allows for set-off, stating: "Buyer may, to the fullest extent permitted by law, exercise the right of set-off, or set-off rights of Buyer's related businesses against any amount otherwise due seller."

FGDI's argument is based on the premise that Guaranty's security interest attaches to David Walker's accounts. To support this designation, FGDI points to Guaranty's financing documents in which Guaranty took assignment of Walker's "accounts" as collateral, inter-alia. Were Guaranty's interest only in David Walker's accounts, FGDI's priority argument would be persuasive; however, Guaranty's security interest is not solely, nor primarily, in David Walker's accounts. Guaranty's paramount interest is in David Walker's 2012 crops and crop proceeds.

Guaranty asserts, and FGDI does not dispute, that Guaranty followed the proper procedure and requirements to obtain a production-money security interest in David Walker's 2012 crops and crop proceeds. Guaranty perfected its interest by filing an effective and appropriately descriptive financing statement with the Mississippi Secretary of State, completed

all notification requirements, and provided funds to Walker to be used for the production of crops. These assertions are supported by deposition testimony and undisputed by the parties. Production-money security interests are granted a higher priority over other secured interests; e.g, secured interests in accounts only, because the obligation incurred by the debtor, for the value given, is restricted to the production of crops. Miss. Code Ann. §§ 75-9-102(a)(64A), (64B).

> Miss. Code Ann. § 75-9-103(c) states:
>
> A production-money security interest does not lose its status as such, even if:
>
> > (1) The production-money crops also secure an obligation that is not a production-money obligation;
> >
> > (2) Collateral that is not production-money crops also secures the production-money obligation.

Regardless of Guaranty's additional interest granted in David Walker's accounts, Guaranty's security interest status is that of a production-money security interest established at the time of filing. Guaranty's production-money security interest, attached at filing, is paramount to FGDI's set-off interest which may have been created when Walker delivered his crops to the terminal. Therefore, Guaranty's perfected production-money security interest assumes priority over any account debtor set-off FGDI may have possessed.

Further support for Guaranty's priority position over FGDI's set-off is indicated by the classification of goods FGDI agrees to purchase from David Walker. FGDI's contracts with Walker require crops to be delivered at a future date. As referenced above, corn and soybeans are defined as goods, and transactions involving the sale of goods are governed by Chapter 2 of the Mississippi Uniform Commercial Code.

Chapter 2 of Mississippi's Uniform Commercial Code requires application of a specific definition of future goods concerning priority for FGDI's analysis. "Future goods", under Miss. Code Ann. § 75-2-105(2), are defined as "Goods [that] must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods. A purported present sale of future goods or of any interest therein operates as a contract to sell." The comment to §75-2-105 clarifies, "Growing crops are included within the definition of goods since they are frequently intended for sale."

At the time of contracting with FGDI, David Walker's 2012 crops would be defined as "future goods" under Miss. Code Ann § 75-2-105. However, FGDI's interest in David Walker's 2012 crops for application of priority determination can only apply and pass when the crops exist and can be identified. It follows that Guaranty's perfected interest in production-money crops, which attached at the time of filing, and well before planting, assume priority over a presumed set-off that may only create a priority interest, at the earliest, when the crops are existing and identified, or as FGDI argues, when Walker delivered his crops to the grain terminals. This court finds Guaranty's priority interest attached at filing on April 18, 2012, and FGDI's interest to execute set-off attached, at earliest, when Walker delivered his grain to the terminals at the end of the 2012 growing season after his crops were in existence and identifiable.

Other jurisdictions have faced this priority issue between a production-money security interest and a contractual set-off by the buyer of crops and found the production-money security interest superior. For instance, a Kansas appellate court held in *Ag Servs. of America., Inc. v. DeBruce Grain, Inc.*, 28 Kan. App. 2d 582, 586-87 (2001), "a buyer of farm products in the ordinary course of business is not entitled to use setoffs it has against the seller to diminish the secured party's interest in the farm products."

This court finds Guaranty's interest in David Walker's 2012 crops attached at the time of filing. Whatever interest FGDI acquired to impose set-off, whether analyzed under chapter 2 or chapter 9 of the Mississippi Uniform Commercial Code, still results in the priority of Guaranty's production-money security interest over account debtor status applied to FGDI through David Walker's commodity contract breach.

## Conclusion

For the foregoing reasons, this court finds that summary judgment should be granted in favor of plaintiff Guaranty. Guaranty's paramount priority in David Walker's crops before disposition warrant judgment as a matter of law in the plaintiff's favor. Guaranty has possessory rights of David Walker's 2012 crop proceeds before FGDI's set-off in the amount of $359,853.62. A separate order in accord with this opinion shall issue this day.

This, the 22nd day of May, 2015.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**SENIOR U.S. DISTRICT JUDGE**